IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

**JILL MARIE FREETHY v. STEVEN MACONI**

**Interlocutory Appeal from the Circuit Court, Juvenile Division, for Montgomery County**
**No. 90-180     Raymond Grimes, Judge**

---

**No. M2000-00107-COA-R9-CV - Filed July 31, 2000**

---

This Rule 9 interlocutory appeal consists of the singular issue of whether Steven Maconi has sufficient minimum contacts with the state of Tennessee for it to exercise personal jurisdiction over him, thus requiring him to defend a paternity action brought in Tennessee. The Trial Court held that Mr. Maconi had sufficient minimum contacts with the state of Tennessee, and thus, it could exercise personal jurisdiction over him. We reverse the finding of the Trial Court and hold that Mr. Maconi does not have sufficient minimum contacts with the state of Tennessee for it to exercise personal jurisdiction over him.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed, Dismissed and Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Deborah S. Evans, Clarksville, Tennessee, for the appellant, Steven Maconi.

Vanessa Saenz and Roland Robert Lenard, Clarksville, Tennessee, for the appellee, Jill Marie Freethy.

**OPINION**

Steven Maconi, the Appellant, is before this Court pursuant to an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. His only issue, which we restate, is whether his capacity as a licensed stockbroker in Tennessee prior to 1998 constitutes sufficient minimum contacts that he should be required to defend a paternity suit brought in Tennessee. The Trial Court did not hear any oral testimony, but relied on affidavits and interrogatories.

We hold that Mr. Maconi does not have sufficient minimum contacts with the state of Tennessee for it to exercise personal jurisdiction over him. Therefore, we vacate the findings of the Trial Court and remand for further proceedings, if any, consistent with this opinion.

Mr. Maconi and Donna Freethy, Jill Freethy's mother, admit that they had a brief relationship during the summer of 1980 in New Jersey. Although Donna Freethy was married at the time, she contends that Mr. Maconi is the father of her daughter, Jill Freethy, who was born on March 27, 1981. Donna Freethy maintains that after she told Mr. Maconi that she was pregnant, he moved to Pennsylvania and has never taken any responsibility for Jill Freethy. According to Donna Freethy, she and Mr. Maconi had a short relationship in 1982, and then in 1993, she moved to Clarksville, Tennessee. She asserts that in November 1998 she initiated telephone contact with Mr. Maconi regarding Jill Freethy. Donna Freethy contends that she has "exchanged numerous telephone calls and photographs of Jill with Mr. Maconi since [she has] been a resident of Montgomery County, TN." Donna Freethy further argues that "[i]n one of our conversations Mr. Maconi admitted to me that as a Merrill Lynch Stock Broker he has numerous clients in the State of Tennessee and conducts business with residents of this State."

While Mr. Maconi does not dispute the existence of a relationship with Ms. Freethy in 1980, he has denied through the years that he is the father of Jill Freethy. He contends that he terminated his relationship with Donna Freethy when he learned that she was married, and he maintains that he did not believe that he was the father of Jill Freethy because Donna Freethy's husband had returned home from his work in construction overseas.

Mr. Maconi maintains that he has never initiated any telephone contact with Jill Freethy or Donna Freethy. Mr. Maconi does state that he called Donna Freethy when he was notified of the paternity suit against him and that they spoke for approximately one minute. Mr. Maconi contends that Donna Freethy's "infrequent telephone calls would sometimes span a period of years in between them." Moreover, Mr. Maconi asserts that he has never exchanged photographs with Donna Freethy and that he has never visited the state of Tennessee to see Donna Freethy. His only visit to the state of Tennessee was approximately ten years ago for a family reunion at a rental home in Pigeon Forge, Tennessee.

Mr. Maconi argues that he has never visited Tennessee to conduct any personal or professional business. He explains that as a stockbroker with Merrill Lynch, he is "sometimes required . . . to receive client accounts when another broker leaves Merrill Lynch or retires." He notes that he had at one time seven accounts in Tennessee: four of these were clients that had lived/worked in the New Jersey and Delaware area and who relocated to Tennessee upon retirement, two of the clients were referrals by DuPont in Delaware, and one client was received from a retiring broker. Mr. Maconi asserts that these accounts were not obtained as a result of soliciting business in the state of Tennessee. He adds that he does a significant amount of work on the DuPont account. He notes that "[t]he temporary assignment of these accounts to me primarily consisted of general advice to these clients over the phone." Mr. Maconi denies ever telling Donna Freethy that he had numerous clients in Tennessee.

Regarding the DNA test which was obtained to determine Jill Freethy's paternity and which was analyzed by a laboratory in Tennessee, Mr. Maconi asserts that he never entered into a contract for such services in Tennessee. He claims that he "was told that Jill Freethy had a serious injury as a result of an automobile accident and it was necessary that [he] undergo the DNA test in order that proper family medical records could be compiled, therefore, [he] agreed to the tests. . . . Mrs. Freethy lead me to believe that the only purpose for this testing was to acquire information regarding medical history since her daughter had been in an accident." Mr. Maconi states that the test was administered in Wilmington, Delaware. He further states that he had contacted a laboratory in North Carolina to conduct the DNA test, but was informed that Genetic Assays, which is located in Tennessee, had been contacted by Donna Freethy and that "they were quick, readily available, and relatively inexpensive."[1] Mr. Maconi asserts that he "had no knowledge of their whereabouts or headquarters location."

The Trial Court in its order states that "[t]here have been at least four minimum contacts in this matter," although the Court does not elaborate on what the "four minimum contacts" are.

Due process requires that a nonresident defendant have certain "minimum contacts" with the forum such that the maintenance of the suit does not offend the "traditional notions of fair play and substantial justice." International Shoe Company v. Washington, 326 U.S. 310, 316 (1945).

---

[1] The DNA test indicates a 99.94% probability that Mr. Maconi is the father of Jill Freethy.

-3-

"In the case of <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. 462, 472 (1985), the Court stated that a defendant must have "fair warning" that a particular activity might subject him to jurisdiction in the forum and that requirement is satisfied if the defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." <u>Burger King</u>, 471 U.S. at 472.

In <u>Shelby Mutual Insurance Company v. Moore</u>, 645 S.W.2d 242, 246 (Tenn. Ct. App. 1981), this Court noted that three primary factors are to be considered when determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum state and convenience.

We are of the opinion that Mr. Maconi's contacts with Tennessee do not meet the minimum contacts requirement. With the exception of one visit to a relative's rental home ten years ago, Mr. Maconi has never been to Tennessee. All contact with Mr. Maconi was initiated by Jill Freethy or Donna Freethy in Tennessee. While Mr. Maconi was licensed in Tennessee as a stockbroker by Merrill Lynch until 1998, his business dealings with Tennessee clients consisted of telephone conversations with clients who had moved from another state to Tennessee upon their retirement, not as a result of his solicitation of business in Tennessee. Perhaps more importantly, Jill Freethy's paternity suit is not related in any respect to Mr. Maconi's profession as a stockbroker. Therefore, we believe that the maintenance of the paternity suit would offend the "traditional notions of fair play and substantial justice."

For the foregoing reasons the judgment of the Trial Court is reversed, the case dismissed, and the cause remanded for collection of costs below. Costs of the appeal are adjudged against Jill Freethy.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

-4-